UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 21-10 (DWF/ECW) |
| Respondent-Plaintiff, | Civil No. 22-3115 (DWF) |
| v. | MEMORANDUM OPINION AND ORDER |
| Russell James Anderson-Baldwin, | |
| Petitioner-Defendant. | |

## INTRODUCTION

This matter is before the Court on Defendant Russell James Anderson-Baldwin's *pro se* motion to vacate the judgment and motion for an evidentiary hearing. (Doc. Nos. 60, 63.) The United States of America (the "Government") opposes the motions. (Doc. No. 81.) For the reasons outlined below, the Court denies Anderson-Baldwin's motion.

## BACKGROUND

Anderson-Baldwin was charged with two counts of production of child pornography and one count of possession of child pornography. (Doc. No. 1.) Anderson-Baldwin pled guilty to one count of production of child pornography. (Doc. No. 26; Doc. No. 70.) He admitted to messaging a minor and persuading the minor to "create sexually explicit videos." (Doc. No. 70 at 38.) Specifically, Anderson-Baldwin admitted to producing "a video of the minor victim while she was fully nude inserting a hairbrush into her anus." (*Id.*) Anderson-Baldwin admitted to creating "approximately 286 sexually explicit videos of Minor A using messaging applications over the Internet."

(Doc. No. 26 at 3.)  He also had in his possession around 140 images and videos of other minor victims, which showed sexually explicit images of children.  (Doc. No. 70 at 41.)

At the sentencing hearing, the Government noted that Anderson-Baldwin "broke in" to the minor victim's household in the middle of the night and entered the minor's bedroom "after he had been for months producing her sexually over social media."  (Doc. No. 71 at 8.)  He did this all while he was on probation for another child sex offense.  (*Id.*)

The Court sentenced Anderson-Baldwin to 288 months in prison and 25 years of supervised release.  (Doc. No. 50.)  Anderson-Baldwin now brings a motion under § 2255, arguing that his sentence should be vacated, set aside, or corrected because his trial counsel was ineffective.  (Doc. No. 60.)  He also requests an evidentiary hearing, certificate of appealability, appointment of counsel, and court subpoenas.  (Doc. No. 63.)  The Government opposes the motions.  (Doc. No. 81.)

## DISCUSSION

I.     **Section 2255 Legal Standard**

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  In making such a motion, a § 2255 action requires a prisoner to show that he has the right to be released because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a).

It must be kept in mind that a § 2255 request for relief is extraordinary and "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

## II.     Ineffective Assistance of Counsel

The United States Constitution guarantees that the accused "shall enjoy the right . . . to have the Assistance of Counsel" in criminal prosecutions.  U.S. Const. amend. VI.  To prevail on a claim for ineffective assistance of counsel under § 2255, however, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076.  To overcome that burden, a defendant must first "show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficiency must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  The defendant must show that the errors were not the result of "reasonable professional judgment." *Id.* at 690.  There is a strong presumption "that counsel . . . rendered adequate assistance." *Id.*  Second, the defendant must establish that the deficient performance actually prejudiced the defense. *Id.*  A defendant must prove with "a probability sufficient to undermine confidence in the outcome" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Anderson-Baldwin offers twenty-one grounds for his ineffective assistance of counsel claim. The Court addresses each argument in turn below.

### A.     Failure to Investigate

Anderson-Baldwin first argues that his counsel failed to investigate. Specifically, he asserts that his counsel did not want to view the child pornography and was "unwilling[] to investigate the videos and texts" with the minor victim. (Doc. No. 60 at 4.) Anderson-Baldwin contends that his counsel needed to view the videos and text messages to determine whether there were any aggravating or mitigating factors that could impact his sentence.

"If the defendant cannot prove prejudice, [the court] need not address whether counsel's performance was deficient." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To prove prejudice, Anderson-Baldwin must demonstrate that "but for counsel's errors, the result of the proceeding would have been different." *Id.* While Anderson-Baldwin argues that his counsel could have found mitigating factors within the videos and texts messages, this argument is merely speculative. He has not explained how a more thorough review of the child pornography would have resulted in a lower sentence. In other words, he has not demonstrated that but for counsel's failure to review the videos and text messages, the outcome of his case would have been different. And significantly, the Court reviewed the videos and text messages prior to the sentencing hearing. (Doc. No. 71 at 38.) Because Anderson-Baldwin has failed to establish prejudice, the Court need not address whether the conduct was deficient.

Additionally, Anderson-Baldwin asserts that his counsel failed to "watch the video of [his] stepfather threatening to murder [him]," which he argues was mitigating evidence that would have resulted in a lower sentence. (Doc. No. 60 at 15.) Again, Anderson-Baldwin has failed to establish prejudice. Anderson-Baldwin described the video to his probation officer, and a description of the video was included in the presentence investigation report ("PSR"). (Doc. No. 35 at 6.) Anderson-Baldwin's assertion that his probation officer would have recommended a lower sentence, and the Court would have ordered a lower sentence, if the video would have been produced is speculative. Moreover, Anderson-Baldwin has failed to demonstrate that his counsel's failure to further pursue the video was unreasonable. His counsel was concerned that "overemphasis on the video could distract from efforts to show Anderson-Baldwin's acceptance of responsibility and willingness and ability to change." (Doc. No. 81-1 ("Turner Decl.") ¶ 9.) This strategic decision was not deficient. *Link v. Leubbers*, 469 F.3d 1197, 1204 (8th Cir. 2006) ("[W]e consider strategic decisions to be virtually unchallengeable unless they are based on deficient investigation.").

Next, Anderson-Baldwin asserts that his counsel failed to order a neurological evaluation that "measures actual brain activity due to traumatic brain injuries," personality disorders, and "speed of an individual['s] brain activity." (Doc. No. 60 at 17.) Counsel stated that she did not order a neurological evaluation because "there was no reason to believe [Anderson-Baldwin] was incompetent—[he] was an active and thoughtful participant in our meetings together; he understood the legal theories and potential defenses that we discussed." (Turner Decl. ¶ 8.) Anderson-Baldwin fails to

5

explain why a neurological evaluation was necessary, and thus the Court concludes that his counsel's decision to not order such evaluation was reasonable.

Even if such exam would have been available for Anderson-Baldwin, he fails to explain how this exam would have resulted in a lower sentence. The record contains ample evidence of Anderson-Baldwin's troubled childhood and personality disorder. The PSR noted that Anderson-Baldwin's mother and stepfather had issues with substance abuse, and he often witnessed domestic violence within the home. Anderson-Baldwin was also bullied in school and described as having few friends. At the sentencing hearing, his counsel emphasized that Anderson-Baldwin is a "troubled adult" and noted his "physical and mental struggles and his TBI, his traumatic brain injury." (Doc. No. 71 at 21.) Anderson-Baldwin also stated at the hearing that he has been diagnosed with obsessive compulsive disorder and described himself as "fairly immature for my age." (*Id.* at 28.) Anderson-Baldwin has failed to establish that a neurological exam would have provided information that was not already in the record, and therefore his argument that such exam would have resulted in a lower sentence is speculative.

Anderson-Baldwin also argues that his counsel failed to view and submit photos of a head injury he attained from a prior car accident. He asserts that, had the Court known this information, the Court would have imposed a lower sentence. As noted above, the Court was aware of the car accident and resulting traumatic brain injury and considered this information before imposing a sentence.

Lastly, Anderson-Baldwin argues that his counsel waited until the month before his sentencing hearing to prepare and took an excessive number of vacations throughout

6

the course of his representation. Even if true, Anderson-Baldwin fails to explain how these claims prejudiced him.

### B. Plea Agreement Errors

Next, Anderson-Baldwin argues that his counsel told him that he was guaranteed a 180-month sentence. He further argues that his counsel "did not inform [him] what an appeal was before giving up that right." (Doc. No. 60 at 5.) Anderson-Baldwin asserts that he would not have pled guilty had he known that he was giving up his right to appeal and that his sentence was not guaranteed. As the Government notes, these assertions are contradicted by the record. Anderson-Baldwin signed a plea agreement that stated that he understood the possible range of punishment and that he was giving up his right to appeal. (Doc. No. 26 at 5, 12.) Then at the plea hearing, the Court asked him if he understood that "there's up to a maximum sentence of 30 years in prison" for the offense he was pleading guilty to and that he was giving up his right to appeal his case. (Doc. No. 70 at 11, 30.) He again said he understood. (*Id.*) While Anderson-Baldwin now contends that he did not understand, he "fails to overcome the 'strong presumption of verity' that attache[s] to statements made in 'open court.'" *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997).

### C. Failure to Seek Downward Departure

Anderson-Baldwin argues that he wanted to seek a downward departure, but his counsel appeared to believe that a downward departure and downward variance are the same thing. Anderson-Baldwin wanted to assist the Government with another investigation and thus asked his counsel to subpoena his Snapchat data to look for

7

evidence that other men were producing child pornography of the minor victim. He also asserts that he sent his counsel documents related to a downward departure that his counsel ignored. He further alleges that his counsel failed to inform him early on about the prospect of a substantial-assistance motion.

In response, his counsel states that Anderson-Baldwin wanted to provide the Government with substantial assistance in an investigation in order to obtain a lower sentence. She determined that this was "an unwise strategy" because "most of what [Anderson-Baldwin] told [her] about other men was hearsay." (Turner Decl. ¶ 7.) Additionally, she was "concerned that drawing attention to Anderson-Baldwin's belief that the minor victim was the subject of child pornography made by many men, and not just [him], could come across as an attempt to blame or shame the victim." (*Id.*)

Overall, the Court concludes that Anderson-Baldwin has not demonstrated prejudice. It is entirely unclear what information Anderson-Baldwin had on his Snapchat about other men that would not have already been available to the Government. Even if Anderson-Baldwin had relevant information, the Court concludes that his counsel's decision to not pursue a downward departure was a reasonable strategic decision. *See Link*, 469 F.3d at 1204.

### D. Failure to Object to the Presentence Report

Anderson-Baldwin next argues that his counsel failed to correct the PSR. He asserts that the PSR incorrectly included a fourth-degree attempted sexual assault charge. The charge relates to an incident in which Anderson-Baldwin broke into the minor victim's bedroom in the middle of the night. He asserts, however, that there "was zero

sexual intention" and thus the fourth-degree attempted sexual assault charge was unwarranted. (Doc. No. 60 at 8.) This charge, along with three other related charges, were ultimately dismissed when Anderson-Baldwin was charged at the federal level. (Doc. No. 35 at 13.) Anderson-Baldwin does not dispute that he was charged with fourth-degree attempted sexual assault. Rather, he appears to assert that he was not guilty of the offense, as he lacked intent. Because the PSR correctly notes that the charge was dismissed, Anderson-Baldwin's counsel was not ineffective for failing to challenge the accurate information within the report.

### E.  Failure to Provide Character Witnesses

Anderson-Baldwin claims that his counsel incorrectly advised him that he was "not allowed to bring in character witnesses" for his sentencing hearing. (Doc. No. 60 at 16.) It is unclear to the Court what information these witnesses would have shared about Anderson-Baldwin's past that was not already in the record. While these witnesses likely would have testified that they "thought [Anderson-Baldwin] was generally a good person," that testimony "would barely have altered the sentencing profile presented to the [Court]." *Strickland*, 466 U.S. at 700. It was therefore not unreasonable for Anderson-Baldwin's counsel to advise him to not seek character witness testimony. Further, Anderson-Baldwin has not demonstrated that character witness testimony would have changed the sentence imposed by the Court.

### F.  Failure to Provide Discovery

Anderson-Baldwin argues that his counsel failed to provide him with discovery. In response, his counsel states that she sent Anderson-Baldwin "copies of all the

substantive discovery materials that [she] was permitted to provide [him]," but she was "not permitted to provide him with copies of either the child-pornography evidence . . . or any discovery containing material covered by the protective order." (Turner Decl. ¶ 11.)

Even if Anderson-Baldwin's claim is true, he fails to explain how access to discovery would have changed the outcome of his case.

### G. Sexual Harassment and Other Misconduct Allegations

Anderson-Baldwin alleges that his counsel sexually harassed him. He states that his counsel wore "tight fabric at times over Zoom which would egregiously display the size of her breasts." (Doc. No. 60 at 21.) He further claims that his counsel mentioned her relationship status to "put ideas in [his] mind." (*Id.*) He believes that his counsel repeatedly flirted with him and changed her appearance to impress him. The Court finds these allegations entirely unfounded and, frankly, inappropriate. Sexual harassment is a serious accusation that should not be thrown around lightly. Not only are Anderson-Baldwin's allegations outlandish, but he fails to explain how any of this alleged conduct impacted the outcome of his case.

Anderson-Baldwin makes a number of other allegations of misconduct. He argues that his counsel was "biased towards males who play World of Warcraft," referred to him as homosexual, which he describes as a "sexually abusive and vulgar" comment, made a comment about "wanting to use street drugs," and "mocked [him for] wanting to show [his] inventions to the court." (*Id.* at 30.) The Court questions the veracity of all of these allegations. But even if true, these claims fail as Anderson-Baldwin has not demonstrated prejudice.

10

Additionally, Anderson-Baldwin argues that his counsel feared him, as she explained to him how she was afraid of someone like him "breaking into her home and coming after her." (*Id.* at 34.) In response, his counsel states that he misinterpreted their conversation. She said that she "explained what I thought the Government would say about his breaking into the minor victim's bedroom at night. I attempted to convey to him why and how others would find that scary. He struggled seeing the situation from the victim's perspective." (Turner Decl. ¶ 14.) The Court believes that Turner's declaration provides important context to their conversation; however, even if Anderson-Baldwin's account of the conversation was entirely true, he has failed to explain how this conversation impacted the outcome of his case.

H.   **Sentencing Memorandum and Hearing Errors**

Anderson-Baldwin claims that his counsel included false information in her sentencing memorandum. He argues that information about two bus drivers who "physically abused [him] as a child" was incorrect. (Doc. No. 60 at 37.) He further asserts that comments that his stepdad physically hit him were false. Even if true, Anderson-Baldwin fails to demonstrate that these mistakes are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and further fails to explain how these statements prejudiced him. *Strickland*, 466 U.S. at 687.

Next, Anderson-Baldwin argues that his counsel was unprepared for the sentencing hearing. He further claims that when he was speaking to the Court, his counsel told him to "wrap it up." (Doc. No. 60 at 36.) He asserts that if he had been able

11

to keep talking, he would have been granted a downward departure and downward variance. As his counsel notes, Anderson-Baldwin spoke at the sentencing hearing for approximately one hour. (Turner Decl. ¶ 15.) She "became concerned that if he spoke for too long[,] he would hurt his case, rather than help it." (*Id.*) Again, Anderson-Baldwin has failed to demonstrate prejudice. He does not explain what more he wanted his counsel to say at the hearing, nor does he explain what more he wanted to say to the Court. His argument that the Court would have lowered his sentence if he had been able to speak longer at the sentencing hearing is entirely speculative.

Anderson-Baldwin further argues that his counsel failed to object when the prosecutor described him as a pedophile in front of the Court. As the Government notes, at the time this statement was made, Anderson-Baldwin had pled guilty to production of child pornography and further admitted to possessing child pornography. While Anderson-Baldwin may have found the statement to be offensive, he has failed to establish that the prosecutor's comment impacted the outcome of his case or that his counsel's failure to object was unreasonable.

Finally, Anderson-Baldwin contends that he should not have received a two-level enhancement for the age of the victim. Anderson-Baldwin received a two-level enhancement because the victim in this case was a minor who was over the age of twelve but not yet the age of sixteen. As the Government notes, that enhancement was the same in 2019, when Anderson-Baldwin committed the offense, as it was in 2021 when he was sentenced. *Compare* U.S. Sent'g Guidelines Manual § 2G2.1(b)(1) (U.S. Sent'g Comm'n 2021) ("If the offense involved a minor who had . . . (B) attained the age of

twelve years but not attained the age of sixteen years, increase by 2 levels."), *with* U.S. Sent'g Guidelines Manual § 2G2.1(b)(1) (U.S. Sent'g Comm'n 2018) ("If the offense involved a minor who had . . . (B) attained the age of twelve years but not attained the age of sixteen years, increase by 2 levels."). Thus, there was no reason for his counsel to object.

Overall, Anderson-Baldwin has failed to demonstrate that his counsel was ineffective. Each of his twenty-one claims fail for the reasons outlined above.

### III.   No Evidentiary Hearing Required

There is no reason for the Court to further explore any credibility issues with respect to Anderson-Baldwin's claims. A § 2255 motion can be dismissed without a hearing if: (1) the defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). All of Anderson-Baldwin's allegations are either contradicted by the record, inherently incredible, conclusions, or, even if accepted as true, would not entitle him to relief.

### CERTIFICATE OF APPEALABILITY

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court has considered whether issuance of a COA is appropriate and concludes that no issue is

raised "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994). Moreover, Anderson-Baldwin has not made a substantial showing of the denial of a constitutional right. Thus, the Court will not issue a COA.

## CONCLUSION

For the reasons set forth above, the Court denies Anderson-Baldwin's motion to vacate the judgment and motion for evidentiary hearing, certificate of appealability, appointment of counsel, and court subpoenas.

## ORDER

Based upon the record before the Court, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1. Petitioner-Defendant Anderson-Baldwin's *pro se* motion to vacate under 28 U.S.C. § 2255 (Doc. No. [60]) is respectfully **DENIED**.

2. Petitioner-Defendant Anderson-Baldwin's *pro se* letter requesting evidentiary hearing, certificate of appealability, appointment of counsel, and court subpoenas (Doc. No. [63]) is respectfully **DENIED**.

3. No evidentiary hearing is required in this matter.

4. No Certificate of Appealability will be issued to Petitioner-Defendant Anderson-Baldwin.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 4, 2023           s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge